Melanie L. Cyganowski
Jennifer S. Feeney
OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

*Proposed Counsel to the Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SIMON MARK POSEN,<br><br>Debtor. | Chapter 11<br><br>Case No. |

## AFFIDAVIT UNDER LOCAL BANKRUPTCY RULE 1007-2

STATE OF NEW YORK    :
                                         : SS:
COUNTY OF NEW YORK  :

SIMON MARK POSEN, being duly sworn, deposes and says:

1. Deponent makes this Affidavit pursuant to Local Rule 1007-2 of the Rules of this Court. On October 23, 2015 (the "Petition Date"), I filed a voluntary petition for relief under chapter 11 of title 11, United States Code in this Court. There are no other prior or other bankruptcy proceedings filed by or on behalf of me.

2. I am self-employed, primarily engaged in the business of trading commodities. I hold seats on the COMEX and the New York Mercantile Exchange (NYMEX). I am also an investor and have real estate investments in properties located in Florida, New Jersey, and New York (Manhattan, Port Jervis, and Staten Island). I hold some of these real estate investments in my name and other holdings are held through limited liability companies. My primary asset is

my place of residence in New York, New York. This is also the location from where I primarily conduct my trading and other investment related activities.

**A.  Assets and Liabilities**

3.  My estimated assets are between $10 million and $50 million and my estimated liabilities are also between $10 million and $50 million. I intend to file my Schedules of Assets and Liabilities and Statement of Financial Affairs within fourteen (14) days of the Petition Date. The Schedules will set forth in greater detail my assets and liabilities, including the amount of cash currently held in banking and trading accounts and a list of my real estate holdings and any other investments. There is no property of mine that is in the possession or custody of any public officer, receiver, trustee or assignee for the benefit of creditors, mortgage pledgee, or assignee of rents.

4.  A list of my unsecured creditors, together with their names, addresses, nature of the debt, and the amount of the debt (to the extent known) is being filed together with my petition. I estimate that my unsecured debts, excluding debts for unknown amounts and any contingent, disputed and unliquidated litigation claims, are approximately $5 million.

5.  In addition to my unsecured creditors, I have one secured creditor – First Republic Bank, 111 Pine Street, San Francisco, CA 94111, which is owed almost $8 million. On March 27, 2012, I obtained from First Republic Bank a mortgage in the principal amount of $5 million on condominium property located at One North Moore Street, New York, NY (A/K/A 240-244 West Broadway) (the "NY Property"). The mortgage secured a promissory note issued by me in favor of First Republic Bank. The NY Property has an estimated value in excess of $18 million.

6.  In addition, I have two Equity Credit Line Mortgages with First Republic Bank in the aggregate amount of $3,750,000, also secured by the NY Property. One Home Equity Line

of Credit in the amount of $3,000,000 was entered into on September 18, 2013, and the second Home Equity Line of Credit in the amount of $750,000 was entered into on July 1, 2014. Prior to the Petition Date, I would regularly draw on the line of credit to pay my living expenses and routinely pay back amounts as they became due. As of the Petition Date, $2,922,669.44 was outstanding under my home equity lines of credit. I intend to negotiate with First Republic to seek continued use of these credit lines during the bankruptcy case.

**B.     Cash Management/Checking Accounts**

7.      I primarily use two checking accounts. One checking account is maintained at First Republic Bank and the other checking account is maintained at Bank of America. As I am a commodity trader, I also maintain accounts at the clearing house Intl FCStone Financial, Inc. and Morgan Stanley. Promptly after the Petition Date, I intend to file a motion seeking to continue the use of each of these accounts.

**C.     Taxes**

8.      Prior to the Petition Date, on or about October 22, 2015, I filed my federal income tax returns for 2013 and 2014. For 2013, I owe $373,367, inclusive of interest. For 2014, I owe $205,737, inclusive of interest. These amounts do not include penalties that have been assessed and which I intend to contest. Soon after the Petition Date, I intend to file a motion with the Court seeking leave to pay the amounts due and owing to the Internal Revenue Service on account of my 2013 and 2014 federal income tax returns. I hope to resolve any issues regarding the payment of penalties in my bankruptcy case.

**D.     Litigation**

9.      I am currently a defendant in two litigations: (a) <u>Steve Ackerman and Elisha Rothman v. Axiodyn Fund, LP, Axiodyn Capital Partners, LLC, Anthony Birbilis, and Simon</u>

3

Posen, pending in the Supreme Court of New York, County of New York, Index No. 652843/2014 (the "New York Litigation") and (b) Stuart Simonsen v. Simon Posen, pending in the United States District Court for the District of Montana, Billings Division, Case No. 13-00083-SEH (the "Montana Litigation").

The New York Litigation

10.    Plaintiffs in the New York Litigation invested $1.75 million in Axiodyn Fund LLP ("Axiodyn"), an investment vehicle in which I was a member. Axiodyn is now defunct. At the conclusion of trading by Axiodyn, there was a shortfall and Axiodyn had insufficient funds to pay the Plaintiffs' remaining investments. Plaintiffs alleged that I and the other individual defendant removed funds from Axiodyn and never returned such funds at the year-end reconciliation. Plaintiffs sued and asserted eighteen causes of action, seeking damages in an amount in excess of $1.75 million, plus punitive damages, costs, and interest.

11.    Prior to the filing of my bankruptcy petition, I reached an agreement with the Plaintiffs whereby I agreed to pay $110,000 to resolve their claims against me. A Settlement Agreement was drafted and I delivered $110,000 to my attorney to be held in escrow pending execution of the Settlement Agreement. The Settlement Agreement was not executed prior to my bankruptcy filing. I intend to promptly file a Motion under Bankruptcy Rule 9019 for authorization to execute and effectuate the terms of the Settlement Agreement. Although I believe that I have valid defenses, in light of the potential litigation risk and significant sums being claimed, I believe this to be a fair and reasonable settlement which is of benefit to my other creditors.

The Montana Litigation

12.     The Montana Litigation was commenced on June 17, 2013 in the United States District Court for the District of Montana, Billings Division, before the Honorable Sam E. Haddon, District Court Judge (the "Montana Court"). The plaintiff in that action, Stuart Simonsen, alleges that I breached a written software license agreement that he contends I signed "as of the 15th of October, 2008, retroactive to the 1st of September, 2008."

13.     In fact, as I testified in my deposition in the Montana Litigation, I did not execute the software license agreement that Simonsen contends I signed, and indeed, I never saw a copy of it until it was produced in connection with the Montana Litigation. Deposition testimony of a non-party whom Simonsen alleges executed the purported written agreement as a "witness" is consistent with my own. In his testimony he also denied executing that document.

14.     The issue in the Montana Litigation relates to the amount to which Simonsen claims he is entitled for use of certain proprietary trading software. The only agreement between us was an oral one under which Simonsen was to (and did) receive 20% of trading profits obtained through the use of the software. The trading software resulted in trading profits in September and October, 2008, for which Simonsen admits that he was paid $5,598,112.80, but in November 2008 use of the trading software resulted in approximately $10 million in losses, at which time trading was suspended.

15.     The alleged written agreement that Simonsen produced in the Montana Litigation purports to state that Simonsen was to receive 50% of the trading profits, not 20%. In the Montana Litigation, Simonsen contends that I owe him an additional principal amount of $9,331,538.87 (the alleged difference between 50% of trading profits and the 20% that he was

5

paid) plus pre-judgment interest (which I understand under Montana law is 10% per annum, not compounded, or approximately $933,000 per year), post-judgment interest, and other amounts.

16. Simonsen's claims are without merit and I believe that I have substantial defenses to those claims. In connection with the Montana Litigation, a digital forensic expert I retained analyzed Simonsen's hard drive and in June 2015, he prepared a supplemental report of his findings. That report established that the alleged written agreement dated "as of the 15th of October, 2008" was fabricated in February, 2012. The expert also concluded that certain emails on which Simonsen relies raised similar issues about their validity. The Montana Court noted, "... in many ways, the report is kind of a critical analysis and refutation of the validity of the documents that the witness has reviewed."

17. Nonetheless, the Montana Court ruled that the alleged written agreement would be deemed authenticated on procedural grounds because of what was found to be my Montana counsel's failure to timely comply with scheduling orders and his agreement to certain stipulated facts. The Montana Court also reserved ruling on certain matters of admissibility for trial.

18. The Montana Court also denied my right at trial to call the digital expert as a witness, also primarily on procedural grounds, including that the expert failed to sign the report in a timely manner.

19. Plaintiff Simonsen personally filed for Chapter 7 bankruptcy in Montana on January 10, 2014 and consequently the Chapter 7 Trustee in his case has stepped into his shoes as plaintiff in the case before the Montana Court.

**E.     Conclusion**

20. I intend to use the bankruptcy process to reorganize my debts and resolve ongoing litigation. My bankruptcy filing is the result of significant unsecured debts, including substantial

6

amounts owed on account of taxes, personal debts and trading losses, and presence of substantial litigation risk. Although I own significant assets, I do not have a significant amount of liquid assets in relation to the size of my debts. I estimate that once I reorganize my debts, resolve any issues with the IRS regarding penalties, and address ongoing litigation issues, funds will be available for distribution to creditors. The amount of any distribution will be largely dependent upon the outcome of Simonsen's claims, which I believe to be meritless and based upon a fraudulent document.

Simon Mark Posen

Sworn to before me this 23rd day of October, 2015

MEAGHAN MILLAN
Notary Public, State of New York
No. 02MI6326724
Qualified in New York County
Commission Expires June 22, 2019